UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RANDALL D. KNOWLES, | ) |
| Petitioner, | ) CASE NO. C11-1930-JCC-MAT |
| v. | ) REPORT AND RECOMMENDATION |
| DONALD HOLBROOK, | ) |
| Respondent. | ) |

Petitioner Randall D. Knowles proceeds *pro se* in this 28 U.S.C. § 2254 habeas action. He is in custody pursuant to his 2009 conviction for possession of a stolen vehicle. (Dkt. 14, Ex. 1.) The Snohomish County Superior Court sentenced petitioner to fifty-seven months confinement. (*Id.*)

Petitioner raises two grounds for relief in his habeas petition. (Dkt. 6.) Respondent filed an answer to the petition with relevant portions of the state court record. (Dkts. 12 & 14.) Respondent argues that petitioner's claims lack merit and that his habeas petition should be denied. Petitioner did not submit a response to respondent's answer.

The Court has considered the record relevant to the grounds raised in the petition,

REPORT & RECOMMENDATION
PAGE -1

including all hearing transcripts. For the reasons discussed herein, it is recommended that petitioner's habeas petition be denied without an evidentiary hearing and this action dismissed.

I

The Washington Court of Appeals described petitioner's case as follows:

> On the morning of June 5, 2009, employees of Best Auto Parts, a wrecking yard and used car lot, discovered that a 1997 black Ford Mustang was missing. Because no one had been given permission to take the car out of the yard, the yard manager called 911.
>
> Police immediately broadcast a description of the Mustang to local police agencies. Brier police responded, indicating that they had seen the vehicle driving through their jurisdiction.
>
> That same morning, Bothell resident Darren Holdt noticed a black Mustang near his home that had not been parked there earlier in the day. Holdt watched as a man got out of the mustang and walked away with a red, one-gallon gas can. When police arrived a short time later, Holdt gave them a description of the man.
>
> That afternoon, police located a man matching Holdt's description in the general vicinity of Holdt's residence. The man, later identified as Knowles, was sitting next to a red gas can. Knowles gave the officers a false name and two different birth dates. He also denied having a wallet. The officers arrested him and found his identification, bearing his real name, in his wallet. Holdt subsequently identified Knowles in a "show-up."
>
> Police found a cell phone and a car key in Knowles' jacket. The key said, "Ford" on it, and was attached to an alarm "fob." The key fit the door of the Mustang and matched a duplicate key and alarm at the dealership.
>
> The State charged Knowles with possession of a stolen vehicle. Instruction 8 stated in pertinent part:
>
>> To convict the defendant of the crime of possessing a stolen motor vehicle, each of the following elements of the crime must be proved beyond a reasonable doubt:
>>
>> 1.   That . . . the defendant knowingly possessed or disposed of a stolen motor vehicle;

2.   That the defendant acted with knowledge that the motor
    vehicle had been stolen;

    3.   That the defendant withheld or appropriated the motor
    vehicle to the use of someone other than the true owner or person
    entitled thereto.

    During closing arguments, the prosecutor told the jury they had to find
that Knowles "knowingly possessed or disposed of a stolen vehicle" and that he
"acted with knowledge that the vehicle had been stolen." He then argued that
"when you give a false name and date of birth . . ., you know you did something
wrong and you know you shouldn't have driven the stolen vehicle." Defense
counsel reiterated the elements of the offense, stating, "The crime is driving that
car and knowing it's stolen." In rebuttal, the prosecutor stated:

    My understanding from the Defense argument is that the Defendant
    [has] admitted to possessing the key and he was driving the vehicle.
    Well then, he's committed the crime. He possessed a stolen vehicle.
    I'm not proving that he committed the theft. I'm proving that he
    possessed the stolen vehicle. So now we're at the point where I'm at
    rebuttal and my understanding is that he's admitted to the crime.

The prosecutor then repeatedly told the jury to follow the instructions, stating in
part, "The to-convict instructions, follow those. That's the law." Near the end
of his argument, the prosecutor stated, "There's this argument that he admitted
driving the vehicle. Maybe he didn't know it was stolen. I would submit to
you he gave a false name because he knew he was caught.

    When the jury retired to deliberate, the prosecutor told the court he
would be in his office and defense counsel gave the court her cell phone number.
During deliberations, the jury sent out a question regarding the to-convict
instruction: "Instruction #8, Question #1. Does the defendant have to
knowingly know the vehicle was stolen or just be in possession of the vehicle to
prove or not approve [sic] question #1?" Twenty minutes later, the court
replied, "The jury must render its verdict according to the instructions already
given." The record is silent as to whether the court contacted counsel before
responding to the jury's inquiry.

(Dkt. 14, Ex. 3 at 1-3.)

    Petitioner, proceeding with counsel, appealed to the Washington Court of Appeals.

(*Id*., Ex. 4.)   The Court of Appeals affirmed the conviction and subsequently denied

REPORT & RECOMMENDATION
PAGE -3

petitioner's motion for reconsideration. (*Id*., Exs. 3 & 8.) Petitioner, proceeding *pro se*, sought review in the Washington Supreme Court. (*Id*., Ex. 9.) The Washington Supreme Court denied review without comment. (*Id*., Ex. 10.) The Court of Appeals issued its mandate on August 26, 2011. (*Id*., Ex. 11.) Petitioner did not pursue a collateral attack on his conviction.

II

Petitioner here raises two grounds for relief:

(1) The prosecutor committed misconduct during closing argument by telling the jury that petitioner could be convicted merely because he was found in possession of a vehicle that was stolen.

(2) The trial court violated petitioner's right to due process when it did not consult him or his counsel before answering a jury question as to whether knowledge was required to convict.

(Dkt. 6.)

Respondent asserts, and the Court agrees, that petitioner appears to have properly exhausted his state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). The Court, therefore, proceeds to the merits of petitioner's claims.

III

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). In addition, a habeas corpus petition may be granted if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the

state court proceeding. § 2254(d)(2).

Under the "contrary to" clause of § 2254(d)(1), a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. at 412-13.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). In addition, if a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Court finds that petitioner's claims can be resolved by reference to the state court record. Therefore, an evidentiary hearing is not necessary. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.") For the reasons described below, the Court concludes that petitioner's claims lack merit and should be denied.

A.  Ground One

Petitioner alleges prosecutorial misconduct in his first ground for relief. He points specifically to statements made by the prosecutor in rebuttal closing argument that the jury

could find petitioner guilty by merely finding he was in possession of a stolen vehicle:

> . . . My understanding from the Defense argument is that the Defendant is admitted to possessing the key and he was driving the vehicle. Well, then he's committed the crime. He possessed a stolen vehicle. I'm not proving that he committed the theft. I'm proving that he possessed the stolen vehicle. So now we're at the point where I'm at rebuttal and my understanding is that he's admitted to the crime.
>
> . . .
>
> . . . There's this argument that he admitted driving the vehicle. Maybe he didn't know it was stolen. I would submit to you he gave a false name because he knew he was caught. . . . Maybe he was going to go back and drive the car and he didn't know it was stolen at the time until the police came by. Those are all peripheral issues. What you should consider are the facts.
>
> The facts are this: On June 5th, somehow the Defendant got the key. He was driving the vehicle based on what you saw of the evidence and the Defense argument and I what [sic] I'm submitting to you now. He possessed the vehicle and he did not have permission to drive it. . . .

(Dkt. 14, Ex. 14 at 232-34.) Petitioner maintains the jury was plainly confused by the prosecutor's remarks, as evidenced by their mid-deliberation inquiry on the question of petitioner's knowledge that the vehicle was stolen.

In analyzing a claim of prosecutorial misconduct, the appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Improper argument does not, per se, violate a defendant's constitutional rights." *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993). "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'"

*Darden*, 477 U.S. at 181 (quoted source omitted). The question is whether it can be said the "prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. (quoting *Donnelly*, 416 U.S. at 643). In assessing the claim, the Court must examine the entire proceedings and place the prosecutor's statements in context. *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987).

The Washington Court of Appeals considered petitioner's prosecutorial misconduct claim as follows:

> Knowles contends the prosecutor committed reversible misconduct when he suggested in closing argument that possessing the key and driving the car were sufficient to convict. He claims this argument misstated the law because it implied that the jury need not find that he knew the car was stolen. But because Knowles did not object to the remarks, any misconduct is not reviewable unless the remarks were "'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice'" that could not have been cured. The remarks do not meet this standard.
>
> We review remarks in closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given. The court's instructions in this case required the jury to find that Knowles "acted with knowledge that the motor vehicle had been stolen" and to disregard any remark, statement, or argument that was not supported by the law set forth in the instructions. Both counsel reviewed the instructions with the jury and reminded them that they had to find that Knowles knew the car was stolen. Although some of the prosecutor's remarks in rebuttal omitted that element, they were not, when viewed in the context of his entire argument, flagrant or ill-intentioned and were easily curable.

(Dkt. 14, Ex. 3 at 4; footnotes omitted.) As argued by respondent, petitioner fails to establish that the state court's consideration of this claim was contrary to or an unreasonable application of clearly established federal law.

"The arguments of counsel are generally accorded less weight by the jury than the court's instructions and must be judged in the context of the entire argument and the

REPORT & RECOMMENDATION
PAGE -7

instructions." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 898 (9th Cir. 1996) (citing *Boyde v. California*, 494 U.S. 370, 384 (1989)). In this case, there is no dispute that the jury was properly instructed regarding the elements of the crime at issue and advised as to the distinction between evidence and argument. The prosecutor, in his closing statement, accurately described the jury instruction defining the elements of the crime, including that the jury was required to find that petitioner "knowingly" possessed a stolen vehicle. (*Id.*, Ex. 14 at 214-16.) He also, in both closing and rebuttal closing remarks, repeatedly reminded the jury of their obligation to follow the law as reflected in the jury instructions. (*Id.* at 212-16, 233-34.) Defense counsel likewise accurately reflected the elements of the crime in her closing remarks, addressing in detail the requirement of showing petitioner's knowledge that the vehicle was stolen. (*Id.* at 221-32.) She did not object to the comments made in the prosecutor's rebuttal. *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988) ("Although the prosecutor's behavior at trial might have approached misconduct, any error could have been cured by contemporaneous objections.") Additionally, and as discussed further below, the jury was again reminded to refer to the jury instructions after submitting their mid-deliberation inquiry.

Petitioner fails to demonstrate that, when viewed in light of the record as a whole, the prosecutor's comments in his rebuttal closing argument were more than isolated incidents or that they resulted in actual prejudice. *See*, *e.g.*, *Darden*, 477 U.S. at 182 (prosecutor's improper comments did not deprive the petitioner of a fair trial where "[t]he trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence[,]" and "[t]he weight of the evidence against petitioner was heavy; . . . reduc[ing] the likelihood that the jury's decision

was influenced by argument."); *United States v. Tarrazon*, 989 F.2d 1045, 1053 (9th Cir. 1993) (finding a "singular, somewhat ambiguous comment does not constitute a miscarriage of justice or an affront to the integrity of the judicial process."); *Hall v. Whitley*, 935 F.2d 164, 165-66 (9th Cir. 1991) (dismissing prosecutorial misconduct claim where prosecutor's remarks were "isolated moments in a three day trial.") As such, it cannot be said that the comments at issue "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643.

In sum, petitioner fails to support the contention that the prosecutor's comments in rebuttal closing argument constituted a violation of his constitutional rights entitling him to habeas relief. As such, his first ground for relief should be denied.

B. <u>Ground Two</u>

In his second ground for relief, petitioner argues the trial court violated his due process rights by not consulting him or his counsel before answering a jury question as to whether knowledge was required to convict. As reflected above, the jury asked: "'Instruction #8, Question #1. Does the defendant have to knowingly know the vehicle was stolen or just be in possession of the vehicle to prove or not approve [sic] question #1?" (Dkt. 14, Ex. 3 at 3.) "Twenty minutes later, the court replied, 'The jury must render its verdict according to the instructions already given.'" (*Id.*)

The Washington Court of Appeals addressed this claim as follows:

> For the first time on appeal, Knowles contends he is entitled to a new trial because, contrary to CrR 6.15(f)(1), due process, and the Sixth and Fourteenth Amendments, the court did not consult him or his counsel before

answering the jury inquiry.1  But while the record establishes that the court answered the jury's inquiry, it is silent as to whether the defendant and counsel were present or consulted.  Although Knowles claims a minute entry "fail[s] to show that the defendant and counsel were consulted by the court," the minute entry he cites, and the only one in this court's record, is from sentencing, not jury deliberations.2  He has thus failed to carry his burden of providing a sufficient record to review this claim on appeal.3

Even if the court failed to consult counsel before answering the inquiry, the error was harmless beyond a reasonable doubt.4  In general, a court's response to a jury inquiry will be deemed harmless if it conveyed no affirmative information.5  The court's response in this case did nothing more than refer the jury to its instructions.  Those instructions clearly required the jury to find that Knowles knew the car was stolen.  Contrary to Knowles' assertions, the jury's inquiry did not indicate confusion about whether it had to find that he knew the car was stolen in order to convict.  Rather the inquiry indicates the jury was confused only whether such knowledge was a requirement of section "(1)" of the to-convict instruction.  The jury *did not* express confusion section "(2)" of that instruction, which plainly required them to find "[t]hat the defendant acted with knowledge that the motor vehicle had been stolen."

(Dkt. 14, Ex. 3 at 4-6.)  Again, the Court finds no basis for habeas relief.

The Sixth Amendment of the United States Constitution guarantees a criminal

---

1 [State court footnote]  When a jury asks questions during deliberations, the court 'shall notify the parties of the contents of the questions and provide them an opportunity to comment upon an appropriate response.'  CrR 6.15(f)(1).  This rule has a constitutional underpinning, i.e. the defendant's right to be present at all critical stages of trial, including the court's handling of jury inquires.  State v. Ratliff, 121 Wn. App. 642, 646, 90 P.3d 79 (2004).

2 [State court footnote]  In any event, absent affidavits from counsel or the court, it is doubtful that a silent minute entry would, by itself, constitute a sufficient record to review Knowles' claim of error.

3 [State court footnote]  State v. Rienks, 46 Wn. App. 537, 545, 731 P.2d 1116 (1987) (where record and affidavits established only that the judge answered the jury's inquiry, the defendant failed to provide a sufficient record to review "his claim that the court erred in communicating with the jury outside of his presence").

4 [State court footnote]  Ratliff, 121 Wn. App. at 646.

5 [State court footnote] See, e.g., State v. Allen, 50 Wn. App. 412, 419, 749 P.2d 702 (1988) (jury told to read instructions and continue deliberations).

defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658 (1984).

In *United States v. Cronic*, the Supreme Court held that a trial is presumed to be unfair, without any inquiry into prejudice, if a defendant is denied counsel at a "critical stage" of the proceedings. *Id*. at 659-60. This presumption of prejudice "'without inquiry into the actual conduct of the trial,'" applies "when 'counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding[.]'" *Wright v. Van Patten*, 552 U.S. 120, 124-25 (2008) (quoting *Cronic*, 466 U.S. at 659-60).

The Court initially notes that, as found by the state court and as argued by respondent, there is an absence of evidence showing the trial court did, in fact, fail to consult with petitioner's counsel prior to responding to the jury's question. The record reflects that, prior to the beginning of jury deliberations, both the prosecutor and counsel for petitioner clarified they could be reached by phone numbers provided to the court. (Dkt. 14, Ex. 14 at 235.) There also appears to be no dispute that twenty minutes passed before the trial court responded to the jury's question. (*See id*., Ex. 3 at 3 and Ex. 5 at 17.) Petitioner's assertion that the Court did not contact counsel prior to responding to the jury (*see* Dkt. 6-1 at 8) remains unsupported. In any event, for the reasons described below, petitioner's claim fails even assuming the trial court did not consult with counsel.

The Supreme Court has not set forth a definitive list of "critical stages" wherein prejudice must be assumed from the absence of counsel. *McNeal v. Adams*, 623 F.3d 1283,

REPORT & RECOMMENDATION
PAGE -11

1286 (9th Cir. 2010) (citing *United States v. Benford*, 574 F.3d 1228, 1232 (9th Cir. 2009)). It has, however, explained that "[c]ritical stages involve 'significant consequences' to the defendant's case." *Id*. at 1288 (quoting *Bell v. Cone*, 535 U.S. 685, 695-96 (2002)). The question, therefore, is "whether the deprivation of counsel here occurred during a stage holding 'significant consequences' for criminal defendants[,]" and, if so, whether the "state court decision answering that question in the negative would be an objectively unreasonable application of *Cronic's* general standard." *Musladin v. Lamarque*, 555 F.3d 830, 840 (9th Cir. 2009).

The Ninth Circuit, in *Musladin v. Lamarque*, addressed a situation similar to that presented here. In that case, the trial court informed defense counsel about a mid-deliberation jury communication requesting amplification of a jury instruction, but responded to the question before defense counsel arrived at the courthouse by directing the jury to "refer to the instructions[.]" *Id*. at 835 (case of quoted text modified). While recognizing the formulation of the response to the jury question as a stage at which deprivation of counsel may be critical, the Court denied relief under AEDPA, reasoning as follows:

> Although defense counsel plays a crucial rule in formulating any mid-deliberation communication to the jury by the trial judge, where the judge simply directs the jury to his previous instructions, the potential impact of defense counsel's inability to participate is significantly lessened, because defense counsel played a role in the formulation of those instructions. In such circumstances, the jury receives only such information as was formulated with defense counsel's participation. Although we do not believe that defense counsel's prior participation is sufficient to render a mid-deliberation communication to the jury less "critical" for purposes of the *Cronic* analysis, we cannot say that it would be unreasonable for a state court to so conclude. Accordingly, we are not free to hold that the state court's decision to require a demonstration of prejudice resulting from the denial of counsel here was objectively unreasonable.

*Id*. at 840-43. The Court thereafter concluded that any error in that case was harmless. *Id*. at 843-44.

Here, as in *Musladin*, the state court's decision to apply a harmless error analysis was not objectively unreasonable, and the state court reasonably deemed any error harmless beyond a reasonable doubt. A trial error "is deemed harmless unless it has a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Rice v. Wood*, 77 F.3d 1138, 1144 (9th Cir. 1996) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)). The Court defers to the state court determination that an error did not cause prejudice unless the state court decision on prejudice was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d); *Inthavong v. Lamarque*, 420 F.3d 1055, 1058-59 (9th Cir. 2005). If the Court were to determine that the state court decision was either an unreasonable application of or contrary to Supreme Court precedent, it still must assess whether the error had a substantial and injurious effect on the verdict. *Inthavong*, 420 F.3d at 1059. Under this standard, the Court may not grant habeas relief unless the petitioner suffered actual prejudice from the constitutional error. *Brecht*, 507 U.S. at 637.

The trial judge in this case did no more than refer the jury back to the jury instructions and there is no dispute that those instructions clearly required the jury to find that petitioner knew the vehicle at issue was stolen. Given these circumstances, petitioner fails to support a contention that the alleged denial of counsel had a substantial and injurious effect on the verdict. *See*, *e.g.*, *Musladin*, 555 F.3d at 843-44 (rejecting argument that, in response to a jury question regarding the required elements of the charges at issue, a referral back to the jury instructions resulted in prejudice where, as conceded by the petitioner, the instructions correctly

REPORT & RECOMMENDATION
PAGE -13

stated the required elements for finding the petitioner guilty).

There is no showing that the state court determination of this issue was contrary to or an unreasonable application of clearly established federal law. Accordingly, petitioner's second ground for relief also lacks merit and should be denied.

## IV

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes that petitioner is not entitled to a COA with respect to his claims.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

V

For the reasons discussed above, the Court recommends that petitioner's habeas petition be DENIED and this case DISMISSED. An evidentiary hearing is not required as the record conclusively shows that petitioner is not entitled to relief. A proposed Order accompanies this Report and Recommendation.

DATED this 15th day of May, 2012.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge